**FOR PUBLICATION**

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |
|---|---|
| ROBERT MILLER and <br> MATTHEW ANDERSON <br><br> Plaintiffs <br><br> v. <br><br> WINGMARK CORPORATION, <br> BUDGET MARINE, <br> DENNIS L. BOONE, <br> EDWIN R. PADGETT and <br> WILLIAM M. KARR d/b/a WILLIAM M. <br> KARR & ASSOCIATES, <br><br><br> Defendants. <br>_____ <br><br> EDWIN R. PADGETT, <br><br> Third Party Plaintiff, <br><br> v. <br><br> WILLIAM M. KARR and <br> WILLIAM M. KARR & ASSOCIATES, <br><br> Third Party Defendants. <br>_____ | Civil No. 2005-106 |

**ATTORNEYS:**

**Natalie Nelson Tang How, Esq.**
St. Croix, U.S.V.I.
    *For plaintiff Robert Miller,*

**Clive C. Rivers, Esq.**
St. Croix, U.S.V.I.
    *For plaintiff Matthew Anderson,*

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 2

**Maria T. Hodge, Esq. and Mark D. Hodge, Esq.**
St. Thomas, U.S.V.I.
    *For defendants Edwin Padgett and Wingmark Corporation,*

**Douglas L. Capdeville, Esq.**
St. Croix, U.S.V.I.
    *For defendant William M. Karr,*

**Henry C. Smock, Esq.**
St. Thomas, U.S.V.I.
    *For defendant Budget Marine.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

    Before the Court is the motion of defendants Edwin R. Padgett ("Padgett") and Wingmark Corporation ("Wingmark") (collectively, the "Defendants") for summary judgment against the plaintiffs, Robert Miller ("Miller") and Matthew Anderson ("Anderson") (together, the "Plaintiffs"). For the reasons stated below, the Court will grant the motion.

### I. FACTS

    On or about October 30, 2002, Wingmark entered into a construction management agreement (the "Contract") with William M. Karr & Associates, Inc. ("Karr"). Pursuant to the Contract, Karr agreed to be the construction manager for the development of parcels 3B-41 and 3B-68 in Cruz Bay Quarter, St. John, U.S. Virgin Islands (the "Properties"). During the time period relevant to this matter, Padgett was the record owner of parcel

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 3

3B-68, and Wingmark held the deed thereto. Karr had complete responsibility over the construction of residences on parcel 3B-68 (the "Residences"). Karr also provided full time supervision over the construction site.

Karr hired Boone to lay tile and brick at the Residences.

Boone hired the Plaintiffs to perform construction work at the Residences.

At approximately 7:10 a.m. on July 11, 2003, the Plaintiffs were riding as passengers in a truck driven by Boone. The truck was owned by Budget Marine. Boone was driving on a public road in St. John, Virgin Islands after leaving the work site at the Residences. Miller was in the front passenger seat. Anderson was riding unrestrained in the back of Boone's truck. Boone lost control of his truck, and it rolled over and down an embankment. Both Miller and Anderson were injured in the accident.

The Virgin Islands Police Department charged Boone with negligent driving, driving without a valid license, and lack of proper automobile insurance. Boone was subsequently arrested.

Thereafter, the Plaintiffs commenced this action against Boone, Karr, Padgett, Wingmark, and Budget Marine. Count One of the Amended Complaint (the "Complaint") alleges negligence against Budget Marine. Count Two alleges negligence against

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 4

Padgett and Wingmark.  Count Three alleges intentional infliction of emotional distress against all the defendants.  Count Four alleges intentional as well as negligent infliction of emotional distress against all of the defendants.  Count Five seeks punitive damages.

On May 2, 2007, Padgett and Wingmark filed a notice of their summary judgment motion with the Court and served a copy of the brief upon the Plaintiffs.  The Plaintiffs have failed to timely oppose the summary judgment motion.[1]

---

[1] After the notice of the summary judgment motion was filed, the parties agreed to enlarge the time within which the Plaintiffs' opposition must be filed.  Thereafter, the Plaintiffs moved for an extension of time to file a response under Federal Rule of Civil Procedure 56 (f) ("Rule 56(f)").  The Court granted the Rule 56(f) motion and ordered the Plaintiffs to file their response by September 20, 2007.  On October 5, 2007, the Plaintiffs filed a motion to allow an out of time response to the summary judgment motion. On October 23, 2007, the Court denied the Plaintiffs' motion to file the response out of time.  On October 29, 2007, the Plaintiffs filed an opposition to the summary judgment motion of Padgett and Wingmark.

Pursuant to Local Rules of Civil Procedure 7.1(j) and 56.1(d) ("Rule 7.1(j)" and "Rule 56.1(d)," respectively), the Court will strike the Plaintiff's untimely response and consider the summary judgment motion of Padgett and Wingmark to be unopposed. *See* LRCi 7.1(j) (2006) (providing that the court may grant motions solely on the basis of the information presented by the movant upon the respondent's failure to file a response in opposition to the motion); LRCi 56.1(d) (April 13, 2007) (authorizing the court to find that the facts asserted in a summary judgment motion are undisputed if the respondent fails to file a timely response in opposition to the summary judgment motion); *see also Anchorage Associates v. V.I. Bd. of Tax Review*,

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 5

## II. DISCUSSION

### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 ("Rule 56") if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3rd Cir. 1985). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson*, 477

---

922 F.2d 168, 174 (3d Cir. 1990) (holding that the predecessor to Rule 7.1(j) "does not contemplate that the court will exercise discretion as to whether, for example, the opposing party's failure to respond was due to excusable neglect or whether the movant will suffer prejudice if the motion is denied"); *Bryant v. Thomas Howell Group,* 2000 WL 34205990 at *2-3 (D.V.I. July 20, 2000) (unpublished) (striking the plaintiffs' untimely opposition to the defendant's summary judgment motion and refusing to consider the plaintiffs' excuses for late filing).

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 6

U.S. at 249. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002).

### III. ANALYSIS

Padgett and Wingmark argue that summary judgment is appropriate because the Plaintiffs' injuries were caused by an independent contractor -- in this case, Boone -- who was involved in an accident outside any property owned by Padgett or Wingmark.

A.  **Independent Contractor Status**

As a threshold matter, the Court must determine whether Boone was an independent contractor or an employee of Padgett and Wingmark.

Section 220(2) of the Restatement (Second) of Agency ("Section 220") provides:

> In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
>
> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 7

> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is a part of the regular business of the employer;
>
> (i) whether or not the parties believe they are creating the relation of master and servant; and
>
> (j) whether the principal is or is not in business.

Restatement (Second) of Agency § 220(2) (1957); *see also Evans v. United Arab. Shipping Corp. S.A.G.,* 4 F.3d 207, 216 (3d Cir. 1994).

"Although there are a number of factors relevant to this inquiry, the most important factor is the degree of control exercised by the principal. . . ." *McCarthy v. Recordex Serv.*, 80 F.3d 842, 853 (3d Cir. 1996) (internal citation omitted). In an employer-employee relationship, "the [employer] not only controls the result of the work but has the right to direct the way in which it shall be done." *Id.* (citation and quotation omitted).

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 8

In contrast, "the characteristic of the [employer-independent contractor] relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result." *Id.* (citation and quotation omitted).

The parties do not dispute the fact that the Contract gave Karr "complete responsibility" over the construction of the Residences. (Padgett Aff. at ¶ 11, April 30, 2007.) Karr also agreed to provide "full time supervision" over the work site. (*Id.* at ¶ 12.) There is no evidence suggesting either Padgett or Wingmark had any control over Boone's work on a daily basis. Pursuant to his responsibilities under the Contract, Karr selected Boone for the specific task of laying certain tile work and brick at the Residential Property. All tiles, bricks, and other supplies were provided to Boone at the work site.

Boone sent Karr periodic invoices for his work. Karr paid Boone with funds from Karr's account. Karr paid Boone fixed lump sums rather than an hourly rate. Padgett's affidavit states, "[n]either Boone nor Plaintiffs were employees or agents of mine or Wingmark." (*Id.* at ¶ 24.) In Padgett's view, neither he nor Wingmark had created an employer-employee relationship with Boone.

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 9

The undisputed facts show that neither Padgett nor Wingmark exercised any control over the manner or means in which Boone conducted his work on the Residences. Though Boone was not required to supply his own materials for the work he performed, the evidence as a whole strongly suggests that no employer-employee relationship existed between Padgett or Wingmark and Boone. Therefore, the Court finds that Boone performed his work on the Residences as an independent contractor. *See, e.g., Evans v. United Arab Shipping Co.*, 4 F.3d 207, 216 (3d Cir. 1993) (holding that no employer-employee relationship existed between a ship's owner and the ship's pilot because the owner had no discretion in selecting pilots, and the only control the owner retained was the power to remove a pilot after concluding that the pilot was taking the ship into danger); *Samson v. Harvey's Lake Borough,* 881 F. Supp. 138, 142-43 (M.D. Pa. 1995) (holding that a zoning inspector was an independent contractor because, *inter alia,* the county occasionally supervised the inspector, but exercised no daily control over him; did not pay the inspector out of payroll, but as an administrative expense; and provided only some of his work tools); *Whitfield Constr. Co. v. Commercial Development Corp*., 392 F. Supp. 982, 999-1000 (D.V.I. 1975) (holding that an engineer was an independent contractor because

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 10

he agreed to perform the specific task of designing floor slabs and slab supports, he was paid by the job, and "his was a minute proportion of the project which required a particular expertise").

### B.  Liability of Employer of Independent Contractor

The Complaint in this matter states that Karr was acting as an agent for Wingmark in hiring Boone to work on the Residences. The Defendants contend that, even assuming that Karr's actions are imputed to them and they are thus considered employers of Boone, there is no basis for holding them liable for the Plaintiffs' injuries.

Generally, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or her servants." Restatement (Second) of Torts § 409 (1965).  However, there are several exceptions to the general rule of no liability for the employer of an independent contractor. *See id.* at §§ 410-29; *see also Gass v. V.I. Tel. Co., RACO, Inc.*, 311 F.3d 237, 240-41 (3d Cir. 2002).  The exceptions are based both on the employer's own negligence, *see* Restatement (Second) of Torts § 410-15, and on the theory of *respondeat superior*, *see id.* at §§ 416-429.

Based on the allegations in the Complaint, the exceptions relevant to this matter are those based on negligent selection of

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 11

an independent contractor and on negligent exercise of retained control by the employer. *See id.* at §§ 410, 414. Additionally, the Plaintiffs have alleged that Padgett and Wingmark should be held liable for their injuries based on a *respondeat superior* theory of liability.

    **1.    Negligent Selection of an Independent Contractor**

Under the Restatement (Second) of Torts, section 411 ("Section 411"):

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
>
>   (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
>
>   (b) to perform any duty which the employer owes to third persons.

Restatement (Second) of Torts § 411.

"In order that the employer may be subject to liability, it is therefore necessary that harm shall result from some quality in the contractor which made it negligent for the employer to entrust the work to him." *Id.* at § 411 cmt. b. The employer of an independent contractor may be liable for harm caused by the contractor's incompetence if such incompetence lies in the contractor's lack of skill, experience, or adequate equipment. *See id.* However, the employer of an independent contractor is

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 12

not liable for "any harm caused solely by the contractor's inattention or negligence." *Id.*

The Plaintiffs have alleged that Padgett and Wingmark should be liable for their injuries caused by the truck accident because Padgett and Wingmark "failed to adequately check on Defendant Boone's qualification to perform the job, including but not limited to the possession of a valid driver's license and the safe transportation of workers to and from the job site." (Amended Complaint at ¶ 25, Dec. 22, 2005.) However, Boone was not required to use a truck to transport materials to and from the job site, "as the tiles and bricks being laid by Boone were supplied to him at the property." (*Id.* at ¶ 20.) Further, "Boone was not required or asked by either [Padgett] or Wingmark, to provide the services to provide the services of anyone other than himself to lay that tile." (*Id.* at ¶ 21.)

Assuming, *arguendo,* that the transportation of workers to and from the job site is work that involves "a risk of physical harm unless it is skillfully and carefully done," the undisputed evidence shows that the transportation of workers was not part of the work Boone was hired to perform. The Plaintiffs' injuries were simply not caused by Boone's incompetence in the work he was hired to perform. Furthermore, nothing in the record suggests that Padgett or Wingmark owed the Plaintiffs a duty to protect

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 13

them as they drove to and from the job site, or that they were deprived of that protection as a result of Boone's incompetence.

Accordingly, Padgett and Wingmark may not be liable to the Plaintiff's injuries on grounds of negligent selection of Boone as an independent contractor. *See, e.g., Shreiber v. Camm,* 848 F. Supp. 1170, 1180 (D.N.J. 1994) (holding that a property owner was not liable for the injuries caused when a security guard, who was hired as an independent contractor to protect the estate and its guests from third parties, shot some guests himself); *Maximin v. Rivera,* 25 V.I. 20, (V.I. Terr. Ct. 1990) (holding that the employer of an independent contractor could not be held liable under Section 411 for injuries caused when the contractor, who was uninsured, got in an accident while hauling asphalt in his truck, since "[the employer], could not have foreseen the risk involved in having an uninsured contractor traveling the public highways").

**2.   Negligence in Exercising Retained Control**

Section 414 of the Restatement (Second) of Torts ("Section 414") provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 14

Restatement (Second) of Torts § 414 (1965); *see also Gass*, 311 F.3d at 240-46 (holding that, under Virgin Islands law, an injured employee of an independent contractor may sue the employer of the contractor for harm caused by the employer's own negligence under Section 414); *Figueroa v. Hess Oil V.I. Corp.*, 198 F. Supp.2d 632, 640 ("Section 414 provides for liability for an employer's own negligence where he retains sufficient control over the operative details of the work.").

"In order for [Rule 414] to apply, the employer must have retained at least some degree of control over the manner in which the work is done. . . . There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts § 414 cmt. c.; *see also Figueroa*, 198 F. Supp.2d at 644 ("Control is not predicated upon the day-to-day activities of a general overseer. It involves a more intricate involvement in the work to be done . . . ."). The contract for services and the conduct of the parties demonstrating an affirmative exercise of control are relevant to determining whether the employer had sufficient control to be liable under Section 414. *See Figueroa,* 198 F. Supp.2d at 644.

As discussed above, under the Contract, Karr agreed to assume control over the construction of, and to provide full time

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 15

supervision of the Residential Property. The accident did not occur on the property of either Padgett or Wingmark, or in the vicinity of the Residential Property. There is simply no evidence in the record to suggest that Padgett or Wingmark actually retained any control over the manner in which Boone laid the tile and bricks. Additionally, the evidence shows that Padgett and Wingmark were unaware that Boone had any employees. That fact counsels against a finding that Padgett or Wingmark could have exercised any control over the method of transportation to and from the work site of any of Boone's employees.

Since neither Padgett nor Wingmark retained any control over any aspect of Boone's work, let alone his conduct in driving at the time of the accident on July 11, 2003, they may not be held liable under Section 414. *See, e.g., Arsement v. Spinnaker Exploration Co., LLC,* 400 F.3d 238, 244, 246 (5th Cir. 2005) (holding that the owner of an offshore drilling platform was not liable under Section 414 to plaintiffs, a contractor's employees who were injured on the platform, because the owner lacked sufficient control over the mode or method of the plaintiffs' work); *Proctor v. North Shore Partners, Inc.,* 232 F. Supp.2d 472, 478, 481 (D.V.I. App. Div. 2002) (affirming the grant of judgment as a matter of law in favor of the defendants under Section 414

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 16

after finding that none exercised sufficient control over the actual conduct of the work or assumed affirmative duties with respect to safety); *Hood v. Hess Oil Virgin Islands Corp.*, 650 F. Supp. 678 (D.V.I. 1986) (holding that the property owner's contractual retention of the right to forbid work from being done in a dangerous was not a basis for holding owner liable Section 414, absent evidence that the owner ordered the independent contractor's injured employee to perform work in a certain way).

    **3.** ***Respondeat Superior*** **Liability**

There are several exceptions to the rule of no liability for the employer of an independent contractor that are based on vicarious liability as opposed to the negligence of employer themselves. In certain circumstances, an employer who owes a nondelegable duty to others to make completed work safe is "he is subject to liability for injury caused by any negligence of the contractor which results in the work's not being up to the required standard of safety." Restatement (Second) of Torts § 409 Introductory Note; *see also* Restatement (Second) of Torts §§ 416-25. There are also situations in which an employer is "liable for the negligent manner in which the contractor and his servants do the detail of certain kinds of work entrusted to them," including: work involving a special and inherent risk of danger; work which cannot lawfully be done except under a franchise

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 17

granted to the employer; and work accepted in reliance on the employer's doing the work itself. *See id.* at § 409, Introductory Note; *id.* at §§ 416-29.

Here, Boone was hired to lay perform certain tile and brick laying work at the Residential Property. The Plaintiffs' injuries, however, were not caused by Boone's failure to take reasonable precautions to protect against any danger inherent in laying bricks or tiles. Boone's work did not involve a special and inherent risk of danger. The work Boone was hired to perform was not illegal except under a franchise, nor was it accepted in reliance on Padgett or Wingmark's doing the work themselves.

Accordingly, under the undisputed facts of this case, neither Padgett nor Wingmark may be vicariously liable for the negligent conduct of Boone that caused the Plaintiffs' injuries. *See, e.g., Proctor v. North Shore Partners, Inc.,* 232 F. Supp.2d 472 (D.V.I. 2002) (holding that neither the developer, general contractor, nor the subcontractor was vicariously liable for the injuries sustained by a business invitee who fell from the roof of a construction site after being asked to inspect the roof by an employee of an independent contractor, "because they had no reason to foresee significant risk of harm to someone like him, and no evidence was presented to suggest otherwise"); *Cf. Monk v. Virgin Islands Water & Power Authority,* 53 F.3d 1381, 1393 (3d

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Memorandum Opinion
Page 18

Cir. 1995) ("[U]under Virgin Islands law, employees of an independent contractor are not included within the protected class of 'others' under the peculiar risk provisions of Chapter 15 of the Restatement.").

## IV. CONCLUSION

For the reasons stated above, the Court will grant the motions of Padgett and Wingmark for summary judgment against Miller and Anderson. An appropriate Judgment follows.

S_____
             **CURTIS V. GÓMEZ**
             **Chief Judge**

**FOR PUBLICATION**

```
          IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                DIVISION OF ST. THOMAS AND ST. JOHN
```

|  |  |
|---|---|
| ROBERT MILLER and<br>MATTHEW ANDERSON<br><br>       Plaintiffs<br><br>       v.<br><br>WINGMARK CORPORATION,<br>BUDGET MARINE,<br>DENNIS L. BOONE,<br>EDWIN R. PADGETT and<br>WILLIAM M. KARR d/b/a WILLIAM M.<br>KARR & ASSOCIATES,<br><br><br>       Defendants.<br>――――――――――――――――――――――――<br>EDWIN R. PADGETT,<br><br>       Third Party Plaintiff,<br><br>       v.<br><br>WILLIAM M. KARR and<br>WILLIAM M. KARR & ASSOCIATES,<br><br>       Third Party Defendants. | Civil No. 2005-106 |

**ATTORNEYS:**

**Natalie Nelson Tang How, Esq.**
St. Croix, U.S.V.I.
    *For plaintiff Robert Miller,*

**Clive C. Rivers, Esq.**
St. Croix, U.S.V.I.
    *For plaintiff Matthew Anderson,*

*Miller v. Wingmark, et al.*
Civil No. 2005-106
Judgment
Page 2

**Maria T. Hodge, Esq. and Mark D. Hodge, Esq.**
St. Thomas, U.S.V.I.
     *For defendants Edwin Padgett and Wingmark Corporation,*

**Douglas L. Capdeville**, **Esq.**
St. Croix, U.S.V.I.
     *For defendant William M. Karr,*

**Henry C. Smock, Esq.**
St. Thomas, U.S.V.I.
     *For defendant Budget Marine.*

## JUDGMENT

**GÓMEZ, C.J.**

Before the Court is the motion of defendants Edwin R. Padgett ("Padgett") and Wingmark Corporation ("Wingmark") (collectively, the "Defendants") for summary judgment against the plaintiffs, Robert Miller ("Miller") and Matthew Anderson ("Anderson") (together, the "Plaintiffs"). For the reasons stated in the accompanying Memorandum Opinion of even date, it is hereby

**ORDERED** that the motion for summary judgment is **GRANTED**; and it is further

**ORDERED** that the above-captioned matter is **DISMISSED** with respect to defendants Padgett and Wingmark.

                              S_____
                                 **CURTIS V. GÓMEZ**
                                    **Chief Judge**